# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESEDI TOUSSAINT, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br>            Plaintiff, <br><br>     v. <br><br> CARE.COM, INC., SHEILA LIRIO MARCELO, AND MICHAEL ECHENBERG <br><br>           Defendants. | Civil Action No. _____ <br><br> CLASS ACTION <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> Jury Trial Demanded |

Plaintiff Lesedi Toussaint ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Care.com, Inc. ("Care.com" or the "Company") common stock between March 27, 2015 and April 1, 2019, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.     Care.com purports to be the world's largest online family care platform. The Company purports to "help families make informed hiring decisions" about caregivers.

3.     During the Class Period, and unbeknownst to investors, Care.com made false and/or misleading statements and/or failed to disclose that Care.com leaves it to its customers to vet the caregivers and day-care providers listed on its website.

## JURISDICTION AND VENUE

4.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

6.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b). Care.com is headquartered in this district, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

8.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the New York Stock Exchange ("NYSE"), a national securities exchange.

## PARTIES

9.      Plaintiff Lesedi Toussaint is an individual residing in Queens, New York. Plaintiff purchased shares of the Company at artificially inflated prices during the Class Period and has been damaged by Company's material misrepresentations and omissions of material facts.

10.     Defendant Care.com, Inc., is incorporated in the State of Delaware and has its headquarters in Waltham, Massachusetts. The Company's stock trades on the New York Stock Exchange under the ticker symbol "CRCM".

11.     Defendant Sheila Lirio Marcelo ("Marcelo")  is, and was at all relevant times, Care.com's Founder, Chairwoman and Chief Executive Officer.

12.     Defendant Michael Echenberg ("Echenberg") has been Care.com's Chief Financial Officer since April 2015.

13.     Collectively, Marcelo, and Echenberg are referred to throughout this complaint as the "Individual Defendants".

14.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company and access to material non-public information available to them, but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being

made were false and misleading. The Individual Defendants are liable for the false statements

pleaded herein.

## SUBSTANTIVE ALLEGATIONS

15.     The Class Period begins on March 27, 2015. On that date, Care.com filed on

Form 10-K with the SEC its annual report for the period ended December 27, 2014, which stated

in pertinent part:

> We have invested in building a differentiated member experience for finding
> and managing care. This investment includes the ongoing prioritization of
> features and processes that we believe contribute to the quality of our
> marketplace. Examples of these investments include the manual review of all
> job and profile postings for suspicious or inappropriate content, tools for
> members to review and report other members, a monitored messaging system
> that allows members to communicate without sharing their personal email, **the
> proactive screening of certain member information against various
> databases and other sources for criminal or other inappropriate activity
> and the use of technology to help identify and prevent inappropriate activity
> through our platform**. We believe these product investments, combined with
> our investments in national brand advertising and our domain name itself, have
> established the Care.com brand as a leading and trusted brand for finding care.

(emphasis added).

16.     On March 1, 2016, Care.com filed on Form 10-K with the SEC its annual report

for the period ended December 26, 2015, which stated in pertinent part:

> We have invested in building a differentiated member experience for finding
> and managing care. This investment includes the ongoing prioritization of
> features and processes that we believe contribute to the quality of our
> marketplace. Examples of these investments include the manual review of all
> job and profile postings for suspicious or inappropriate content, tools for
> members to review and report other members, a monitored messaging system
> that allows members to communicate without sharing their personal email, **the
> proactive screening of certain member information against various
> databases and other sources for criminal or other inappropriate activity,
> the use of technology to help identify and prevent inappropriate activity
> through our platform** and a safety center that provides resources and
> information designed to help families and caregivers make more informed hiring
> and job selection decisions[.] We believe these product investments, combined
> with our investments in national brand advertising and our domain name itself,

> have established the Care.com brand as a leading and trusted brand for finding care.

(emphasis added).

17.     On March 9, 2017, Care.com filed on Form 10-K with the SEC its annual report for the period ended December 31, 2016, which stated in pertinent part:

> We have invested in building a differentiated member experience for finding and managing care. This investment includes the ongoing prioritization of features and processes that we believe contribute to the quality of our marketplace. Examples of these investments include the review of all job and profile postings for suspicious or inappropriate content, tools for members to review and report other members, a monitored messaging system that allows members to communicate without sharing their personal email, **the proactive screening of certain member information against various databases and other sources for criminal or other inappropriate activity, the use of technology to help identify and prevent inappropriate activity through our platform** and a safety center that provides resources and information designed to help families and caregivers make more informed hiring and job selection decisions [.] We believe these product investments, combined with our investments in national brand advertising and our domain name itself, have established the Care.com brand as a leading and trusted brand for finding care.

(emphasis added).

18.     On February 27, 2018, Care.com filed on Form 10-K with the SEC its annual report for the period ended December 30, 2017, which stated in pertinent part:

> We have invested in building a differentiated member experience for finding and managing care. This investment includes the ongoing prioritization of features and processes that we believe contribute to the quality of our marketplace. Examples of these investments include the review of all job and profile postings for suspicious or inappropriate content, tools for members to review and report other members, a monitored messaging system that allows members to communicate without sharing their personal contact information, **the proactive screening of certain member information against various databases and other sources for criminal or other inappropriate activity, the use of technology to help identify and prevent inappropriate activity through our platform** and a safety center that provides resources and information designed to help families and caregivers make more informed hiring and job selection decisions [.] We believe these product investments, combined with our investments in national brand advertising and our domain name itself,

have established the Care.com brand as a leading and trusted brand for finding care.

(emphasis added).

19.     On March 7, 2019, Care.com filed on Form 10-K with the SEC its annual report

for the period ended December 29, 2018, which stated in pertinent part:

> We have invested in building a differentiated member experience for finding and managing care. This investment includes the ongoing prioritization of features and processes that we believe contribute to the quality of our marketplace. Examples of these investments include the review of all job and profile postings for suspicious or inappropriate content, tools for members to review and report other members, a monitored messaging system that allows members to communicate without sharing their personal contact information, **the proactive screening of certain member information against various databases and other sources for criminal or other inappropriate activity, the use of technology to help identify and prevent inappropriate activity through our platform** and a safety center that provides resources and information designed to help families and caregivers make more informed hiring and job selection decisions [.] We believe these product investments, combined with our investments in national brand advertising and our domain name itself, have established the Care.com brand as a leading and trusted brand for finding care.

(emphasis added).

20.     Defendant Marcelo signed certifications for the Form 10-K referenced in

paragraph 16 above. Among other things, this certification, which was made pursuant to the

Sarbanes-Oxley Act of 2002, required the signer to attest that they have reviewed the report, that

it does not contain untrue statements, that it fairly represents the financial condition of the

company, and that the company's internal controls are effective.

21.     The Individual Defendants signed certifications for the Form 10-Ks referenced in

paragraph 17 to 20 above. Among other things, each of these certifications, which were made

pursuant to the Sarbanes-Oxley Act of 2002, required the signer to attest that they have reviewed

the report, that it does not contain untrue statements, that it fairly represents the financial condition of the company, and that the company's internal controls are effective.

22.     The statements set out above in paragraphs 15 to 19 were materially false and misleading, and omitted material information necessary to make the statements not misleading in that, in fact, the Company did not effectively screen member information "against various databases and other sources for criminal or other inappropriate activity."

23.     The Company and the Individual Defendants knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements and/or their associations with the Company that made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

24.     On March 8, 2019, the truth about Care.com's ineffective screening practices began to emerge when the Wall Street Journal published an article titled "Care.com Puts Onus on Families to Check Caregivers' Backgrounds – With Sometimes Tragic Outcomes." The article described how caregivers in the U.S. "who had police records were listed on Care.com and later were accused of committing crimes while caring for customers' children or elderly relatives…" These alleged crimes included theft, child abuse, sexual assault and murder.

25.     Following the release of the Friday, March 8, 2019, Wall Street Journal article, the Company's common stock declined, closing down almost 13%, to close at $20.48 per share on Monday, March 11, 2019.

26.     Then, on March 31, 2019, the Wall Street Journal reported that "hundreds of day-care centers" listed as "state licensed" on the Care.com website did not appear to be, and that tens of thousands of unverified day-care center listings were scrubbed from the Care.com website just before the March 8, 2019 Wall Street Journal article was published.

27.     Following the release of the Sunday, March 31, 2019, Wall Street Journal article, the Company's common stock declined, closing down almost 7%, to close at $18.45 per share on Monday, April 1, 2019.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired the Company's common stock between March 27, 2015 and April 1, 2019, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

29.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. More than 24 million Care.com shares trade on the New York Stock Exchange.

30.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.   Whether the Exchange Act was violated by Defendants;

    b.   Whether Defendants omitted and/or misrepresented material facts;

    c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e.   Whether the price of the Company's stock was artificially inflated; and

    f.   The extent of damage sustained by Class members and the appropriate measure of damages.

31.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

32.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

33.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

34.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.   The omissions and misrepresentations were material;

    c.   The Company's common stock traded in efficient markets;

     d.    The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

     e.    Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

35.    At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

36.    The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

37.    To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

38.    The Friday, March 8, 2019 Wall Street Journal article was published after the market had closed. Care.com shares, which closed trading at $23.41 per share on March 8, 2019,

closed trading on Monday, March 11, 2019 at $20.48, a decline of 12.5%. This decline was attributable to the publication of the Wall Street Journal report.

39.     Following the release of the Sunday, March 31, 2019, Wall Street Journal article, which revealed that "hundreds of day-care centers" listed as "state licensed" on the Care.com website did not appear to be, the Company's common stock declined. Care.com shares, which had closed at $19.76 per share on Friday, March 29, 2019, closed at $18.45 per share on Monday, April 1, 2019, a decline of 6.6%. This decline was attributable to the publication of the Wall Street Journal report.

**Count I**
**Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

40.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

41.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

43.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all,

if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count II**
**Violation of § 20(a) of the Exchange Act**
**(Against The Individual Defendants)**

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)     awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(c)     awarding Plaintiff and other members of the Class their costs and

expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs

and disbursements; and

(d)     awarding Plaintiff and the other Class members such other relief as this

Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.


April 3, 2019                                        Respectfully submitted,


                                                    /s/ Jeffrey C. Block, Esq.
                                                    **BLOCK & LEVITON LLP**
                                                    Jeffrey C. Block, jeff@blockesq.com
                                                    Jacob A. Walker, jake@blockesq.com
                                                    260 Franklin Street, Suite 1860
                                                    Boston, Massachusetts 02110
                                                    (617) 398-5600 phone
                                                    (617) 507-6020 fax